# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW DANIEL RAUE, | Case No. 1:14-cv-493-GSA |
| Plaintiff, | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

### I. INTRODUCTION

Plaintiff Matthew Daniel Raue ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Gary S. Austin.[1] The Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole. Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docs. 3 and 7).

1

## II.   FACTS AND PRIOR PROCEEDINGS

On February 1, 2011, Plaintiff filed an application for Disability Insurance benefits alleging disability beginning June 12, 2008. AR 146. He subsequently filed an application for Supplemental Security Income on August 3, 2011, alleging the same disability onset date. AR 146, 148.[2] Plaintiff's applications were denied initially and on reconsideration. AR 74-78, 83-88. Subsequently, ALJ Susanne Lewald held a hearing on October 12, 2012 (AR 26-53), and issued an order denying benefits on November 16, 2012. AR 8-20. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

### A. Plaintiff's Testimony

The hearing was held in San Francisco, California. AR 26. Plaintiff appeared and testified via video conference from Bakersfield, California. AR 26-53. Vocational Expert ("VE") Frank Lucas also testified. Plaintiff was represented by his attorney James Yoro. AR 26.

The claimant was 55 years old at the time of the hearing. AR 28. He attended high school and completed two years of college. AR 29. He previously worked as an environmental engineering tech beginning in 1991. AR 29. This job required oversite of company projects including on-site field supervision of eighteen to twenty-four individuals at a time. AR 29-31. In this position, he lifted up to one hundred pounds occasionally and fifty pounds frequently, and worked at high elevations requiring him to climb stairs, ladders, and process systems. AR 30. The job also required calculations involving trigonometry and field calculus in order to decipher lab reports and conduct on-site chemical analysis. AR 31.

Plaintiff was laid off on a temporary basis in December of 2007, so he decided to have surgery to correct his bilateral bunions. AR 31. After the surgery, he had difficulty with the tissue

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

and bone healing properly for an extended period of time, and he was unable to meet the medical requirements of his company. AR 32. There was no light duty work available at that time and his job was terminated. *Id*. He was not able to look for any additional work because he did not meet the medical qualifications for any other jobs. AR 32.

Shortly after his surgery, Plaintiff was diagnosed with Lupus which affects his ability to function. AR 33, 35. He has a sensitivity to sunlight, which causes him to get fatigued, dizzy, and weak. AR 33-34. The severity of these symptoms varies on a day-to-day basis and depends on how much sunlight he is exposed to. AR 33. He experiences general fogginess that affects his sense of reality. AR 33-34. As a result of the Lupus, at 4:00 and 5:30 p.m., his body "decides to shut off," and he is no longer able to function until about 8:30 a.m. the next day. AR 44-45.

In addition, after the foot surgery, Plaintiff experiences severe pain that radiates laterally from the front to the back of his foot, which makes it difficult to move his toes and feet. AR 36. He wears sandals most of the time, due to the build-up of bone tissue. AR 36. Plaintiff also has a deadening of his nerves on his right side, as well as chronic severe pain on his right side that begins in his lower back that radiates into his right leg causing him to feel as if the leg is paralyzed. AR 38-39. This pain occurs every morning and periodically during the day. AR 38. Plaintiff also suffers from diverticulitis which causes indigestion and requires him to watch his diet. AR37. His indigestion and nausea impact his ability to work because it causes frequent urination problems. AR 36-37.

With regard to daily activities, Plaintiff reported that he picks up some clothes and washes the dishes occasionally. AR 40. He is able to drive for short distances and can go to the grocery store. AR 41. However, he has some trouble walking while he shops. *Id*.

Plaintiff takes Celebrex for edema, Miripax for restless leg syndrome, Percocet for pain, Plaquenil to minimize his Lupus symtoms, Testim to supplement his testosterone, Zyloprim for acid

reflux, and Mentax to address the deadening of nerves on his right side. AR 42. These medications cause Plaintiff headaches, nausea, dizziness, and a general sense of fogginess. AR 43. He also indicated that he has to nap at least one to two hours generally around midday on a daily basis. These limitations were present at the time that he was terminated from his job. AR 46. For a period of time, he tried to stay on the job and accommodate his condition by taking breaks for an hour or two, and then he would continue to work. AR 46.

### B. Medical Record

The entire medical record was reviewed by the Court. AR 211-613. However, the summary of the medical evidence as it relates to Plaintiff's Lupus will be will be referenced below as this is the issue raised in this appeal.

#### *Testing*

On September 6, 2011, Plaintiff underwent an MRI scan of the lumbar spine. AR 512-516. The MRI showed degenerative changes at L4 to L5 and severe canal and bilateral foraminal stenosis. AR 512-516. It also showed mild to moderate canal and bilateral foraminal stenosis throughout the lumbar spine . AR 512-516.

#### *Physician Assessments*

#### *Dr. Kim, M.D., Treating Physician*

Dr. Kim began seeing Plaintiff on July 30, 2009 and saw him regularly until December 2011. AR 550- 563. On June 15, 2010, the doctor noted some improvement on Plaquenil. AR 556. At that time, Dr. Kim noted that Plaintiff's condition was chronic but not life threatening. AR 556.

On March 14, 2011, Dr. Kim noted that the onset of the Plaintiff's condition was gradual and that the severity of the condition was mild. AR 553. On July 12, 2011, he diagnosed Plaintiff with Discoid (Cutaneaous) Lupus. AR 552. He observed that Plaintiff was experiencing pain in multiple joints and that Plaintiff's condition was chronic, however, the severity of Plaintiff's condition was

moderate. AR 552. Dr. Kim noted that the Lupus symptoms lasted for less than 1 hour, that the symptoms occurred randomly, and were aggravated by UV light exposure. AR 552.

On September 19, 2011, Dr. Kim noted that Plaintiff's severity level was nine and that the duration varied. Plaintiff had pain in multiple sites, but the condition was stable. AR 551. On December 19, 2011, Dr. Kim examined Plaintiff again and determined Plaintiff's severity level was five. He diagnosed Plaintiff with Systemic Lupus Ertythematosus, noted fatigue and pain in multiple joints, and determined Plaintiff's Lupus to be chronic and stable. AR 550.

### *Dr Dozier, M.D., Consultative Examiner*

On June 15, 2011, Emanuel Dozier, M.D., a state agency consultative examiner, reviewed the medical evidence and performed a comprehensive medical evaluation. At the time, Plaintiff complained of systemic lupus and bilateral foot pain. AR 425-429. Dr. Dozier observed that Plaintiff had a normal gait, sat comfortably during the interview, walked down the hall without pain, and was able to get on and off the examination table without assistance. AR 426. Although Plaintiff had local tenderness in the hallux joint, his extremities had no clubbing, cyanosis or deformities. AR 426-428.

Testing revealed a full range of motion of the spine and the upper and lower extremitites bilaterally, negative leg raising, and a negative examination of the back. AR 427-428. Plaintiff also had full grip strength and full motor strength in the upper and lower extremities bilaterally. AR 428. Dr. Dozier diagnosed Plaintiff with systemic lupus with joint involvement by history. AR 429. Overall, however, Dr. Dozier's neurological examination revealed normal findings. AR 428.

Dr. Dozier opined that Plaintiff is capable of standing, walking and sitting for a total of six hours in an eight hour day, that he did not need an assistive device to ambulate, and that he could lift and carry fifty pounds occasionally and twenty-five pounds frequently (AR 429). Dr. Dozier opined that Plaintiff should avoid prolonged sun exposure. AR 429.

### *Dr. Chalmers, M.D., Examining Physician*

On April 21, 2012, Antionia Chalmers, M.D., examined Plaintiff due to numbness in the right auxillary area. Plaintiff reported that he had been experiencing numbness for approximately three months. Dr. Chalmers conducted a physical and neurological examination of the Plaintiff, which showed unremarkable findings, except for a linear patch of numbness in the high thoracic region which Dr. Chalmers indicated was due to Plaintiff's Lupus. AR 576-577. Dr. Chalmers noted the degenerative changes in Plaintiff's lumbar spine revealed during the 2011 MRI, and ordered additional testing. AR 577.

### *Dr. Wallace, M.D., Examining Physician*

On July 18, 2012, Daniel J. Wallace, M.D., examined Plaintiff. AR 581. Dr. Wallace diagnosed Plaintiff with possible peripheral vascual insufficiency and probably primary Sjofren syndrome (an autoimmune condition causing dryness to mouth and eyes), parotid swelling, mononeuritis multiplex, sun sensitivity, fatigue, leucopenia, and a strong family history of systemic lupus. AR 581. In a later notation, Dr. Wallace noted that Plaintiff's July 25, 2012 lab results were essentially negative. AR 581. Dr. Wallace was unable to confirm positive SSA, SSB or leucopenia. AR 581. Dr. Wallace found that Plaintiff's lungs were clear and noted mild degenerative changes of the spine. AR 583. Dr. Wallace's impression was that this was an "unremarkable study." AR 583.

### *Dr. Wright, M.D., State Agency Physician*

On April 3, 2012, Dr. Jenise Wright, M.D., a state agency physician, reviewed the medical documentation regarding Plaintiff's impairments and completed a Physical Residual Functional Capacity Assessment. AR 57568-575. Dr. Wright opined that Plaintiff could perform medium work with no prolonged exposure to sunlight. AR 569, 572. In doing so, Dr. Wright noted that Plaintiff's multiple allegations of disability were only partially supported, and that there were credibility

6

concerns because Plaintiff was limping with a cane at the psychological examination, but had normal gait at the medical examinations. AR 573.

### *Dr. De La Rosa, M.D., State Agency Physician*

On July 8, 2011, Dr. De La Rosa reviewed the medical record and filed out a Physical Residual Functional Capacity Assessment. AR 430-434. Dr. De La Rosa opined that the Plaintiff could perform medium work with limited sun exposure. AR 431, 433.

### *Dr. Bugg, M.D., State Agency Physician*

On August 31, 2009, Dr. Bugg reviewed the medical record and completed a Physical Residual Functional Capacity Assessment. AR 239-243. Dr. Bugg opined that Plaintiff was able to perform medium work, but that he could only occasionally climb, crouch, or crawl, but could frequently balance, stoop, and kneel. AR 241.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant

7

is or is not disabled.  20 C.F.R. § 416.920 (a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

### A.  The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 9-20.  More particularly, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013, and that he had not engaged in any substantial gainful activity since June 12, 2008, the alleged onset date. AR 11. Further, the ALJ identified status-post bunionectomy, systemic lupus erythematosus, and degenerative disc disease of the lumber spine as severe impairments.[3] AR 11. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 13.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except that he must avoid jobs that require prolonged sun exposure. AR 13.  In making this determination, the ALJ found the Plaintiff's symptom testimony not to be credible.  AR 13-16. After considering the testimony of a vocational expert, the ALJ also determined that Plaintiff could perform his prior job as a project engineer. She

---

[3] The ALJ also found that Plaintiff suffered from medically determinable non-severe impairments including gastroesophageal reflux disease and mental health impairments. AR 12-13.

also determined Plaintiff could perform the job of an estimator. AR 16-18. As a result, Plaintiff was not disabled under the Social Security Act. AR 18.

## IV. SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. See *Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

In this appeal, Plaintiff argues that the ALJ erred in assessing the Plaintiff's residual capacity. In particular, Plaintiff contends the ALJ failed to properly assess Plaintiff's limitations and formulate a proper RFC because she did not include all of his limitations into the hypotheticals presented to the VE. Additionally, Plaintiff contends the ALJ's credibility determination was improper. (Docs. 12 & 14). In opposition, Defendant argues that the ALJ's decision is supported by substantial evidence. (Doc. 13).

///

////

///

## V. DISCUSSION

**A. The ALJ Properly Discredited Plaintiff's Subjective Complaints.**

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding his testimony not credible. (Docs. 12 and 14). In reply, the Commissioner asserts that the ALJ properly evaluated Plaintiff's subjective complaints. (Doc. 13). A review of the record reveals the ALJ properly assessed Plaintiff's credibility.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin*, --- F. 3d ---, 2015 WL 4620123 *5 (9th Cir. Aug. 4, 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning

10

"the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 15. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d 1273,1281-82 (9th Cir.).

As noted above, because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, --- F. 3d ---. 2015 WL 4620123 at *5; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, --- F. 3d ---, 2015 WL 4620123 at *5.

Here, the ALJ stated the following regarding Plaintiff's credibility:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant informed Alexis M. Valos, Ph.D., State agency consultant, on April 28, 2010, that he would wake up between 6 and 7:00 am and spend the day managing accounts and pursing possible opportunities in art. He reported that he performed the following household chores: making the bed, picking up clothes, washing dishes, preparing his own meals, doing the laundry, and managing his money. He stated that he was able to independently drive to the places he needed to go. Overall, the claimant's varied activities of daily living are inconsistent with a complete inability to perform substantial gainful activity.

AR 15 (citation omitted).

Moreover, after reviewing the medical opinions of Dr. Kim, Dr Dozier, Dr. Wright, Dr. De La Rosa, and Dr. Bugg, the ALJ weighed the medical evidence. AR 14-16. She noted that Plaintiff's diagnostic studies of the lumber spine showed significant findings of degenerative disc disease, but that performing medium work was consistent with the Plaintiff's continual complaints of pain,

11

fatigue, and numbness, as well has his treatment history. AR 16. In reaching this conclusion, the ALJ stated the following:

> In addition … [h]owever, examinations of the claimant were essentially unremarkable, finding the claimant to have a full range of motion of the spine and the extremities bilaterally as well as full grip strength and motor strength of all extremities. Also, examinations showed the claimant to have a normal gait; a negative straight leg release straight leg raise, and no findings of clubbing, cyanosis, or deformity of the extremities. Overall, the claimants' subjective complaints, the objective findings, and his activities of daily living support the ability to perform a wide range of work. AR 16.

Thus, the ALJ relied on the Plaintiff's activities of daily living, and the objective medical evidence when assessing Plaintiff's credibility.

A review of the record reveals that both of the reasons the ALJ relied upon in discrediting Plaintiff's symptoms are clear and convincing reasons that are supported by substantial evidence. For example, the ALJ correctly noted that during a psychological assessment with Dr. Valos, Plaintiff stated that he performs the daily activities outlined above. AR 312-313. The Plaintiff also testified at the hearing that he picks up some clothes, washes the dishes occasionally, and can drive for short distances. AR 40-41. The ability to perform activities of daily living is a valid consideration when evaluating a claimants' credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that the claimant's daily activities "did not suggest [the claimant] could return to his old job at Cummins, but . . . did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "ability to perform various household chores such as cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative conclusions about [her] veracity").

Additionally, the ALJ did a thorough review of the medical record and noted that although the diagnostic studies noted significant findings of degenerative disc disease, the examinations of the Plaintiff were unremarkable. AR 16. This determination is supported by Drs. Dozier, Dr. Chalmers, and Dr. Wallace's findings. AR 425-429; 576-577; 581-583. Dr. Dozier's testing revealed a full range of motion of the spine and the upper and lower extremtites bilaterally, negative leg raising, and a negative examination of the back. He also noted full grip strength and full motor strength in the upper and lower extremities bilaterally. AR 427-428. Dr. Chalmers neurological examination revealed unremarkable findings except for a patch of numbness on Plaintiff's chest due to his Lupus. AR 576-577. Finally, Dr. Wallace's evaluation, which was the most recent examination, was also unremarkable. AR 583. Dr. Wallace further noted that Plaintiff's lab results were negative and he was unable to confirm positive SSA, SSB, or leucopenia. AR 583.

Plaintiff argues that the ALJ ignored Dr. Kim's opinion. However, in doing so, Plaintiff ignores all of the other medical evidence in the record. Here, the ALJ clearly considered Dr. Kim's reports, as a summary of Dr. Kim's findings and the ALJ's analysis are outlined in the decision. AR 15-16. Moreover, although Plaintiff correctly notes that Dr. Kim observed that Plaintiff's symptoms occur regularly and randomly - at one point reaching a level of nine in severity; Dr. Kim's most recent assessment rated Plaintiff's severity level as a five. AR 550-551. Additionally, although the doctor reported Plaintiff suffers from fatigue and pain, he never identifies any limitation that would restrict Plaintiff's ability to work. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Finally, although Dr. Kim characterized the Plaintiff's condition as chronic, the doctor also opined that the condition was stable at every visit which was part of the ALJ's assessment. AR 16, 550-563. In light of above, the ALJ's description of Dr. Kim's notes and her evaluation of the medical record as a whole is supported by substantial evidence. Accordingly, the ALJ's correctly relied upon the medical record

as a basis to discount Plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *See also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility).

In this case, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996). It is not the role of the Court to redetermine Plaintiff's credibility de novo. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2001). Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch*, 400 F.3d at 680-81. Accordingly, the ALJ's credibility determination was proper.

**B. The ALJ's Formulation of Plaintiff's RFC was Proper**

Plaintiff argues that the ALJ erred in assessing his RFC because the ALJ did not incorporate all of the limitations Plaintiffs identified in his testimony into the hypotheticals posed to the VE. (Doc. 12, pg. 13). Defendant contends that the ALJ's hypotheticals contained all the limitations that were

supported by substantial evidence in the record. Therefore, the ALJ's formulation of the Plaintiff's RFC is proper. (Doc. 13, pgs. 8-9).

An ALJ may enlist the help of a vocation expert and formulate a hypothetical to assist in the determining a RFC. "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Here, the crux of Plaintiff's argument is that the ALJ failed to include his subjective complaints in the hypothetical questions posed by the VE. (Doc. 13, pg. 13). However, in light of this Court's findings sustaining the ALJ's credibility determination, Plaintiff's arguments are not persuasive. An ALJ is only required to present the VE with those limitations he or she finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). Because the ALJ found Plaintiff's testimony not be credible, she was not obligated to incorporate this testimony into the hypotheticals or the RFC.

In this case, the ALJ's formulation of the Plaintiff's RFC is supported by substantial evidence. The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically

determinable impairment.' " *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(e), 416.927(e).

Here, after assessing the medical record, the ALJ determined that Plaintiff could perform medium work, with limited sun exposure which is consistent with the RFCs proposed by Drs. Dozier, Dr. Wright, and Dr. De La Rosa. AR 431, 433, 569, 572. The VE testified that a person with this RFC could perform Plaintiff's past work, as well as the job of estimator, which is sedentary work. AR 51-52. Thus, the ALJ's properly determined Plaintiff is not disabled under the Act.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Matthew Daniel Raue.

IT IS SO ORDERED.

Dated: **September 2, 2015** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE